By the Court,
Barbour, J.
The order of May 2d, 1861, is sufficient, it appears to me, to establish the fact that the §5000 which is the subject matter of this controversy, was not then in the hands of the defendants as mere custodians of a fund belonging to the plaintiffs as owners, but that, on the contrary, such sum had been received by the defendants in the ordinary course of their banking business and passed to the plaintiffs’ credit, prior to the transaction with Kellogg; for that order directs the delivery of the cash to the latter, “ if the two drafts are to our credit,” and only in that case.
This view of the case is also sustained and strengthened by the plaintiffs’ letters of the 9th and 15th of May, in which they speak of the delivery of cash contemplated in the order of May 2d, not as a mere handing over to Kellogg of §5000, but as a payment.
The question for consideration then is, whether the acceptance by the defendants of the order of May 2d, and their transfer of the credit from the plaintiffs’ account to that of Kellogg, was an extinguishment of the debt as between the parties to this action.
Kellogg was not the mere agent of the plaintiffs, even to receive the notes and the drafts; but, as to them, he was clothed with power to direct their delivery, by his indorsement, to such person as he should appoint. If he had, upon the face of the order of the 2d of May, been vested with like authority in respect to the money, it could hardly be claimed that the direction to deliver to Kellogg or to his order, the cash which the defendants owed to the plaintiffs, was not, substantially, a requisition to pay the debt to him or to his indorsee, whoever *421 that might he ; and that the acceptance of the order and such a transfer of credits as was made by the defendants, would have operated as a payment of their indebtedness to the plaintiffs. The word deliver, in the case supposed, would be fully equivalent to the word pay ; and would, I think, have authorized the defendants to treat Kellogg, or his or any subsequent indorsee, as the person entitled to have payment of the debt. The intention of the drawer, in that case, to have the money paid to whomsoever should present the paper, would have been quite clear.
I can perceive no substantial distinction between the case supposed and the facts as they existed. The order, as we have seen, did not direct the delivery of moneys belonging to the plaintiffs, and held by the defendants, but, in-effect, required the latter to pay over to Kellogg a sum which they had received in a certain transaction and passed to the credit of, and for which they then had stood indebted to, the plaintiffs. Kellogg was simply the payee of an order directing the payment of a debt; and so, manifestly, the plaintiffs themselves understood it. For in their letter of May 9th, they inform the defendants that they have drawn for the $5000 in favor of E. J. Blake, and request them to honor such draft, “ unless you have already paid the amount on our order to C. W. Kellogg and on the 15th they say, by their cashier’s letter, “ Please inform me whether you have paid our draft for $5000 to C. W. Kellogg.” The cognomen “draft,” thus given to the order by the plaintiffs, coupled with the word “paid,” instead of “ delivered,” clearly shows, it appears to me, a design on their part to place Kellogg, by the order in question, precisely in the condition of a payee of a draft for money, and warranted the transaction had with him by the defendants in regard thereto ; and I am, therefore, of opinion that the acceptance of such order, and so far as the plaintiffs were concerned, its payment by a transfer of credits, was an extinguishment of the debt.
The judgment should be arffirmed, with costs.